A verdict directed by the court will be set aside if there was competent evidence upon which the jury might have found otherwise.

A party is not estopped by his conduct as against one who has not been thereby induced to alter his situation or conduct in any respect.

Where, upon the attachment of A's property for a debt he was owing, it was arranged between the parties and B that the attachment should be released upon B's executing a mortgage of her real estate to secure the debt due from A, and that A should at the same time mortgage certain personal property to B, to indemnify her therefor ; and thereupon B executed her mortgage to secure a note, given for the debt of A, to which her name was subscribed without her knowledge or consent by C, and the attachment was relinquished, and at the same time A mortgaged the personal property to B, to indemnify her for signing the note, and B, not knowing the condition of the mortgage, but believing that it was to indemnify her for executing the mortgage of real estate, accepted this mortgage of personal property ; it was *held :* —

That the mere fact that B subsequently, and after she had been informed as to the note and mortgages, as agent for A, took possession of the personal property and sold a part of it, was not a ratification of the signature of her name to the note by C; but if B, with such knowledge, took or held possession of any of the personal property as mortgagee under the mortgage, she thereby ratified such signature ; —

That if B had thus ratified such signature, she could not afterward revoke this ratification ;—

That if B, knowing the amount of the note, ratified such signature, in the absence of fraud it was immaterial whether she knew how that amount was made up.

ASSUMPSIT, upon a promissory note for $296, dated October 1, 1857, payable to the plaintiffs, or order, on demand, with interest annually, purporting to be signed by Ephraim Clement, Marinda F. Clement, and Abigail Batchelder. The writ was dated October 22, 1858, and originally run against all the signers of the note; but at the first term of court the name of Marinda F. Clement, who, when she signed it, was a married woman and the wife of Ephraim, was stricken therefrom. Ephraim Clement was defaulted at the first term, and Abigail Batchelder pleaded the general issue, at the same time denying her signature under the rule.

On trial it appeared that on and prior to September 30, 1857, Ephraim Clement, whose wife was a daughter of Abigail, resided and kept tavern in Warren, in this county; Abigail living in his family, owning some of the furniture used in the tavern, and having a deed of the tavern stand and the lot upon which it was situated, given to her by Ephraim; but upon what consideration did not appear. On that day the plaintiffs and Messrs. Prescott & Williams, to whom Ephraim was indebted in more than $1,000, commenced suits against Ephraim, and attached the tavern stand and lot, and the personal property in and about the buildings, on the premises. The officer took and held possession of the personal property until the evening of October 1, 1857, when, upon some arrangement entered into between Ephraim, the attaching creditors, and Abigail, the attachment was relinquished. A note of $1,041.50, the amount of their debt, was given to Messrs. Prescott & Williams, secured by a mortgage of the tavern stand and lot, executed and acknowledged by Ephraim and his wife, and Abigail. The note in suit was given to the plaintiffs for the amount of their debt, and a debt of Ephraim to one Pillsbury, secured by a second

mortgage of the tavern stand and lot, executed and acknowledged by Clement and his wife, and Abigail.   Both notes were signed, first by Ephraim, next with the name of Abigail Batchelder, written by Marinda F. Clement, and then by Marinda F. Clement. Each mortgage in its condition described the note secured by it, as having been executed by Ephraim Clement, Marinda F. Clement, and Abigail Batchelder.   Contemporaneous with the execution of the mortgages of real estate to secure these notes, Ephraim Clement made and executed to Abigail Batchelder a mortgage of a horse, various articles of household furniture, and other personal property, in and about the tavern buildings, being the same that had previously been attached by the plaintiffs, and Prescott & Williams, conditioned to indemnify and save her harmless " against all loss, cost, damage, and expense to which she may be subjected by reason of signing two certain promissory notes of even date herewith, one for $1,041.50, made payable to Prescott & Williams, or order, on demand, with interest annually; the other for the sum of $296, made payable to Hazelton & Eaton, or order, on demand, with interest annually, at my request, as surety," &c.   The parties to this mortgage took and subscribed the oath prescribed by the statute before a magistrate ; that it was made for the purpose of securing the liability specified in its condition, and for no other purpose, and that said liability was a *bonâ fide* liability, &c.   A short time after the execution of this personal mortgage, Abigail procured the same to be recorded, and after she knew her name was upon the notes to Prescott & Williams, and to the plaintiffs, she took and held possession of the property described in it, and, with the assent of Ephraim, sold some of the articles ; but there was evidence tending to show that Ephraim went to California in January, 1858, and that his wife and Abigail continued to reside together; that Ephraim, when he left, authorized them to sell the personal property, that they might obtain means of support; and that whatever sales of the personal property were made, were subsequent to this, and were made by Abigail and Marinda together.

As to the question whether or not the name of Abigail was signed to the note in suit by her authority, there was a conflict of testimony; that of the plaintiffs tending to show that she expressly authorized her signature, while that of the defendant tended to show that her name was signed to it without her authority, by her daughter. The defendant's evidence further tended to show that at the time of the execution of the notes and mortgages they were not read to her, and she did not fully understand what was being done ; that she was then 68 years of age, in poor health, with poor eye-sight, and not much accustomed to doing business, and supposed she was taking the personal mortgage to secure her for mortgaging the real estate of which she had a deed to secure Clement's indebtedness to Prescott & Williams, and the plaintiffs, and had no knowledge of the Pillsbury debt, &c.

The plaintiffs contending that, whether the defendant originally authorized her signature to the note in suit or not, she had so recognized and ratified it by the execution of the mortgage of real estate

and that of personal property, and by procuring the latter to be recorded, and by claiming and disposing of the property under that mortgage, after all the facts were known to her, that she could not now repudiate it; the defendant's counsel proposed to show, by the testimony of the defendant herself, that she never intended to ratify this note, but the court excluded the testimony.

The defendant then proposed to show, that as soon as it came to her knowledge that her name was upon the notes, she said publicly to those who talked with her upon the subject, that she would not pay them, for the reason that she never authorized her name to be signed to them; and also offered in evidence the written disclaimer of herself, under her hand and seal, of any interest under the mortgage of personal property, unless the same could be reformed, not waiving her right to have the same reformed. This disclaimer was made and filed at the second trial of this cause, April term, 1860, (a copy of it was made part of the case), but the court excluded the testimony.

The court then proposed to the parties to submit to the jury the question whether or not the defendant originally authorized her name to be subscribed to the note in suit, subject to the opinion of the whole court upon the question of ratification, but the counsel declining to take a verdict upon that point, subsequently directed a verdict for the plaintiff for the amount of the note declared upon; which the defendant moved to set aside for supposed errors in the rulings of the court.

By an amendment, the testimony was reported at length, and leave given to refer to any of the papers used on the trial.

*Morrison,* and *Felton,* for the defendant.

*Hibbard,* and *C. H. Bartlett,* for the plaintiffs.

BARTLETT, J. In the absence of conclusive evidence the jury might have found that the plaintiffs relinquished their attachment, upon· the agreement that the defendant should mortgage the real estate to secure Clement's debt to them; and also that the defendant's name was subscribed to the note without her knowledge or consent by Mrs. Clement. If the jury had so found, it could hardly be claimed that the defendant was estopped to deny the signature by this transaction, for no act, representation, or neglect of hers as to the note, could be held to have induced the plaintiffs to relinquish their attachment. They would have obtained all the security they were to receive in consideration of releasing the attachment, without her signature to the note. The fact that she subsequently took possession of the mortgaged personal property is not shown to have induced the plaintiffs to alter their situation or conduct in any respect, or even to have come to their knowledge before the commencement of this suit. The mere fact of the possession or sale of such property is not necessarily inconsistent with her right to disavow the note; but if, knowing the amount of the note, and the fact that her name had been affixed to it by Mrs. Clement, she took

or held possession of any of the mortgaged property as mortgagee under the mortgage, we think that would be a ratification of the note. Her right to hold the property under the mortgage was simply a right to hold it to indemnify her for signing the note; and if she had not signed the note she had no right to hold the property under the mortgage. Her possession of the property under the mortgage, after she had full knowledge in regard to the amount and signature of the note, would, therefore, be inconsistent with her repudiation of that signature. *Dispatch Line* v. *Bellamy*, 12 N. H. 237; Story Agency, secs. 253, 254; Broom Leg. Max. 676; *Dana* v. *Coombs*, 6 Greenl. 89. Whether the defendant did so take or hold possession of the mortgaged property was, upon the evidence in this case, a question for the jury. If such a ratification was at any time made by the defendant, it could not afterward be revoked by her. Story Agency, sec. 250. If the defendant, knowing the amount of the note, chose to ratify it, in the absence of fraud it is immaterial whether she knew how that amount was made up. *Rice* v. *Dwight*, 2 Cush. 87. The verdict must be set aside, and a

*New trial granted.*